UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA TOLER, individually and
on behalf of a class of similarly
situated persons,

                Plaintiff,

    v.                                Case No. 13-10433

GLOBAL COLLEGE OF NATURAL       HON. TERRENCE G. BERG
MEDICINE, INC., and                  HON. DAVID R. GRAND
HEATHER JOHNSTONE,

                Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT (DKT. 42)

This is an unusual case in which Defendants, a defunct online college and its owner, have repeatedly failed to respond to a class action brought by former students seeking refunds of pre-paid tuition, resulting in the entry of default and final judgment for over a million dollars in damages. Defendants have been given numerous chances to avoid this outcome, but because they and their Counsel have chosen not to defend this lawsuit, they have invited and facilitated the demise of their case.

## I.      INTRODUCTION

Plaintiff Anita Toler was a student enrolled in a degree program offered by Defendant Global College of Natural Medicine, Inc. ("GCNM"), an online post-secondary school that provided distance education programs in natural health. (Dkt. 1, ¶ 16.)  GCNM was owned, operated, and exclusively controlled by

Defendant Heather Johnstone, its lone shareholder, director, chief executive officer and chief operating officer. (*Id.* at ¶¶ 47-53.) To enroll in GCNM's degree programs, students would pre-pay the full amount of tuition. (*Id.* at ¶ 39.) In November 2012, GCNM abruptly closed and did not refund the pre-paid tuition of those students who had not yet completed their courses of study. (*Id.* at ¶ 40.)

On February 4, 2013, Plaintiff filed her class action complaint under Federal Rules of Civil Procedure 23(b)(1) and (b)(3) on behalf of a class defined as: "[a]ll individuals who entrusted tuition in advance to GCNM and were active students in distance education programs of study through GCNM as of November 2012." (*Id.* at ¶ 14.) Plaintiff alleged claims of: (1) breach of fiduciary duty; (2) negligence; (3) wrongful use or loss of property (bailment); (4) innocent, negligent and/or fraudulent concealment and omission; (5) promissory estoppel; (6) unjust enrichment/breach of quasi-contract; (7) equitable estoppel; and (8) breach of contract. (*See id.*)

During the two years this case has been pending, Defendants have not answered the complaint; nor have they either responded to any motions – even when extensions of time were granted – or otherwise defended themselves on the merits. A clerk's entry of default was entered against Defendants on May 22, 2013, establishing their liability. (Dkts. 16-17.) Defendants have not moved to set these entries aside. Defense Counsel has entered an appearance (Dkt. 12), appeared at a telephonic status conference on July 2, 2013 (Dkt. 23, ¶ 1), appeared in person at a show cause hearing on February 4, 2015 (*See* Dkt. 33), filed a suggestion of

bankruptcy (Dkt. 26), and appeared at the hearing on Plaintiff's motion for default judgment (*See* Dkt. 45). In each encounter with Defense Counsel, the Court admonished him to respond to the complaint and attend to his obligations to defend this case.  Defense Counsel would promise do so, but he did not.

The Court certified this case as a class action on April 10, 2015,[1] without opposition from Defendants. (Dkt. 39.) The class having been certified, and the opt-out date having passed, class membership has been established. Plaintiff filed her motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) on October 12, 2015. (Dkt. 42.) Defendants failed to contest the default judgment on liability, so the Court set a hearing date on the motion to enter a final judgment and receive evidence concerning the amount of damages, which was held on December 11, 2015.

After months of silence, Defense Counsel somewhat unexpectedly appeared at the hearing to contest both liability and damages. Defendants had neither filed any response to the motion nor communicated with the Court in any way prior to the hearing. At the hearing, Defense Counsel made an oral motion requesting that the Court deny Plaintiff's motion for default judgment and grant Defendants leave to finally answer Plaintiff's complaint, which had been filed almost three years ago. Defendant's oral motion was unaccompanied by any evidence or legal authority.

For the reasons stated below, the Court will GRANT Plaintiff's motion for default judgment (Dkt. 42) and DENY Defendants' oral motion for leave to answer

---

[1] This case was administratively closed for two years beginning on September 30, 2013 due to a bankruptcy stay. (Dkt. 29.) It was reopened after the stay was lifted in 2014. (*See* Dkts. 30, 33.)

the complaint. Judgment will be entered against Defendants in favor of each individual identified on the Class List attached to this order as Exhibit A in the amount of tuition and fees specified, plus interest, including any interest paid on any loans used to pay the tuition and fees. The total amount of the judgment in favor of the Class will be $1,422,080.05 exclusive of interest.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

As stated, this case is unusual. Its factual and procedural history therefore merits a detailed recounting. Because a clerk's entry of default was entered against Defendants in this case and Defendants have not moved to set these entries aside, Defendants are deemed to have admitted all of Plaintiff's well-pleaded allegations and have never disputed them.[2] *Visioneering Const. v. U.S. Fidelity and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981).

GCNM was a postsecondary school licensed by the State of California that marketed and sold distance education programs in natural health to students throughout the United States. (Dkt. 1, ¶¶ 25-26.) Students could earn certificates, Bachelor of Science, Master of Science and Ph.D. degrees in programs such as Master Herbalist, Nutritional Consultant, and Holistic Health Practitioner. (*Id.* at ¶ 27.) Tuition ranged from approximately $1,000 for the Master Herbalist and Nutritional Consultant programs to more than $10,000 for the Ph.D. program. (*Id.* at ¶ 37.) Students took courses in their own homes and studied at their own pace. (*Id.* at ¶ 28.)

---

[2] Other than a suggestion of bankruptcy notice entered on September 16, 2013 (Dkt. 26), Defendants filed no pleadings, responses, briefs, notices, exhibits, or any other document in this case.

Students were required to pre-pay for their programs of choice; they either paid their full tuition in advance or paid a substantial amount before starting coursework with the balance due soon thereafter. (*Id.* at ¶ 39.) Plaintiff Toler, for example, paid Defendants approximately $3,120 in tuition for her self-paced Bachelor of Science program in holistic health. (*Id.* at ¶ 43.) Plaintiff maintains that at the time GCNM closed without warning in November 2012, it had collected at least $5,000,000.00 in advance tuition from thousands of students. (*Id.* at ¶ 40-41.) After GCNM closed, it did not refund pre-paid tuition for coursework and programs that enrolled students would be unable to complete. (*Id.* at ¶ 46, 67.)

Plaintiff filed her class action complaint on February 4, 2013. (Dkt. 1.) Defendants were served on February 11, 2013, and their answer was due on February 27, 2013. (Dkts. 5-6.) On March 13, 2013, after no answer was filed and no attorney had yet made an appearance on behalf of Defendants, the Court entered an order directing Plaintiff to show cause why her case should not be dismissed for failure to prosecute. (Dkt. 8.) In response, Plaintiff explained that after the complaint was filed, Plaintiff's Counsel was contacted by Defense Counsel who offered to provide "certain pertinent documents relating to Plaintiff's claims prior to answering the Complaint." (Dkt. 10, ¶ 5.) After Defense Counsel made an appearance on April 11, 2013, the parties stipulated to an extension of the deadline to file an answer, allowing Defendants until May 17, 2013. (Dkt. 13.)

Although they were granted an extension, Defendants never answered Plaintiff's complaint. Accordingly, on May 21, 2013, Plaintiff requested a clerk's

entry of default against Defendants. (Dkts. 14-15.) Plaintiff's request was granted on May 22, 2013 for "failure to plead or otherwise defend." (Dkts. 16-17.) Defendants failed to respond to the entry of default, and took no other action to set it aside. Defendants therefore remain in default.

Defendants also failed to provide Plaintiff with the promised "pertinent documents". Accordingly, the Court held a telephonic status conference on July 1, 2013 to address this discovery issue (*see* Dkt. 20). On July 3, 2013, a stipulated order was filed requiring Defendants to produce insurance and financial documents, as well as information "regarding the number of students enrolled in programs at Global College of Natural Medicine, Inc., at the time of its closing and the total amount of tuition paid by those students" by July 26, 2013. (Dkt. 21, ¶¶ 1-2.)

Despite the Court's Order, Defendants failed to produce any of the required documents. Plaintiff filed a motion for contempt and sanctions on August 15, 2013. (Dkt. 23.) Defendants failed to respond to Plaintiff's motion (Dkt. 23) and to the Court's September 5, 2013 show cause order (Dkt. 25). In response, the Court granted Plaintiff's motion for contempt and ordered Defense Counsel to pay $2,740 in attorneys' fees to Plaintiff's Counsel within 30 days of the entry of the order (Dkt. 28, p. 2). Defense Counsel did not comply, however, until 2015 when the Court reopened this case and issued yet another order for Defense Counsel to show cause.[3]

---

[3] When Plaintiff's Counsel informed the Court in 2015 in his motion to reopen this case that Defense Counsel had never paid the fees imposed as sanctions in 2013 (Dkt. 30, ¶ 4), the Court issued an order for Defense Counsel to show cause in person why he had not complied with the order (Dkt. 32). On February 4, 2015, the parties confirmed during the oral hearing on Plaintiff's motion to reopen the above-captioned case that Defense Counsel had only recently paid those fees. After being admonished by the Court, Defense Counsel gave assurances that he would begin responding to

On September 12, 2013, Defendants filed petitions for relief in the United States Bankruptcy Court of the Northern District of Illinois. (Dkt. 26.) As a result, a bankruptcy stay took effect and this case was administratively closed on September 30, 2013 without prejudice to the rights of the parties. (Dkt. 29.) Defendant Global College's bankruptcy case was closed on March 12, 2014. *In re Global College of Natural Medicine, Inc.*, No. 13-36174 (N.D. Ill.), Dkt. 31. Defendant Johnstone's attempt to discharge her debt to Plaintiff and the Class in this case was denied by the Honorable Carol Doyle, United States Bankruptcy Judge, who issued a default judgment in favor of Plaintiff Toler on November 13, 2014 for reasons that included Defendant Johnstone's "repeated failures to comply with court orders regarding discovery after plaintiff was given repeated opportunities to comply." *In re Heather A. Johnstone*, No. 13-36162 (N.D. Ill.), Dkt. 44.[4]

Defendant Johnstone's bankruptcy case was closed on November 17, 2014. *Id.*, Dkt. 48. Defendant Johnstone appealed this decision on December 29, 2014. *Johnstone v. Toler*, No. 14-cv-10405 (N.D. Ill.), Dkt. 1. Despite requesting and being granted *seven* extensions of time to file her opening appellate brief in the United States District Court by the Honorable Jorge L. Alonso, Defendant Johnstone never complied and her bankruptcy appeal was dismissed on August 27, 2015. *See id.*, Dkts. 11, 14, 17, 20, 23, 26, 29, and 31.

---

filings and orders and was ready to litigate this case. The show cause order was vacated. (Dkt. 33.) Unfortunately, however, Defense Counsel never responded to any other filings.

[4] Plaintiff intervened in Defendant Johnstone's bankruptcy proceeding to oppose the discharge of Defendant Johnstone's debt to Plaintiff and the Class, resulting in the creation of a related adversarial proceeding. *Toler v. Johnstone*, Case No. 13-01398, (N.D. Ill.), Dkt. 1.

After Defendants' bankruptcy cases had closed, Plaintiff filed her motion to reopen the above-captioned case on December 22, 2014. (Dkt. 30.) A hearing was held on Plaintiff's motion in Flint, Michigan, on February 4, 2015. (*See* Dkts. 31, 33, 38.) Because the motion was unopposed and Defendants no longer enjoyed any bankruptcy protection preventing the case from being reopened this case was reopened on February 6, 2015. (Dkt. 33.)

Plaintiff then filed her motion for class certification and to appoint Plaintiff's Counsel as Class Counsel on February 13, 2015. (Dkt. 34.) Defendants did not respond. Plaintiff's motion was granted on April 10, 2015. (Dkt. 39.) Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court certified the following class as to all claims and defenses at issue in Plaintiff's complaint:

> All individuals who entrusted tuition in advance to GCNM and were active students in a distance education program through GCNM as of November 2012.

(*Id.* at 15.) As authorized by Rule 23, Plaintiff Anita Toler was certified as the class representative and Thomas H. Howlett and Dean M. Googasian of the Googasian Firm, P.C. were appointed Class Counsel. (*Id.*)

The Court also ordered Plaintiff to move for approval of her proposed class action notice prior to mailing it to potential class members. (*Id.* at 16.) Plaintiff complied on April 22, 2015 (Dkt. 40), and Defendants never objected or otherwise responded. The class notice was approved on May 19, 2015. (Dkt. 41.) Plaintiff was ordered to mail the notice to "all reasonably identifiable class members via first class mail." (*Id.* at 4.) If a notice was returned as non-deliverable, Plaintiff was

8

required to re-mail the notice to "any address indicated by the postal service". (*Id.*) Potential class members could opt out of the class by October 9, 2015. (Dkt. 40, Ex. 1.) Notice was mailed as the Court ordered, and posted online at www.gcnmclassaction.com. (Dkt. 42, p. 16.)

On October 12, 2015, after the opt-out period had ended and class membership was established, Plaintiff filed her motion for default judgment against Defendants. (Dkt. 42.) Before the expiration of the opt-out period, Plaintiff had requested Defendants to provide GCNM's financial records indicating the members of the class, how much tuition each individual paid, and their enrollment status. (*Id.*, Ex. 10.) A compilation of these records, including a proposed class list,[5] was attached to Plaintiff's motion for default judgment in support of Plaintiff's request for a damage award. These financial records were provided by Defense Counsel on July 15, 2015 as an email attachment to Plaintiff's Counsel and were submitted to the Court at the December 11, 2015 hearing on Plaintiff's motion for default judgment. (Dkt. 46.) In the email message sent by Defense Counsel with the financial records, Defense Counsel did not indicate whether Defendants would be opposing Plaintiff's motion for default judgment and did not suggest that the financial information being provided was inaccurate or untrustworthy in any way. (*See* Dkt. 46, p. 1.)

---

[5] Timely opt-out requests were received from Josette D'orazio, H. M. Plant, Jackie Christensen, Tanna Marshall Benedict, Bernadette Kilbury, Jennie Embody, Lynn Kellner, and Melissa Richardson. (Dkt. 42, Ex. 9.) These individuals are not included in the final Class List attached to this order as Exhibit A.

A stipulated order extending the briefing schedule to allow Defendants until November 2, 2015 to respond to Plaintiff's motion for default judgment was entered on October 27, 2015. (Dkt. 44.) This order stated that no further extensions would be granted. (*Id.*) Defendants, however, never responded to Plaintiff's motion nor requested any additional time to respond from either Plaintiff's Counsel or this Court.

Instead, Defense Counsel unexpectedly appeared at the December 11, 2015 hearing on Plaintiff's motion and made an oral request that the motion for default judgment be denied and that Defendants be granted leave to file an answer to Plaintiff's 2013 complaint. Prior to the hearing, Defense Counsel had not communicated with the Court in any way regarding Plaintiff's motion. No evidence was proffered in support of Defendants' motion and the only argument Defendants offered was to suggest the possibility that some of the individuals on the Class List might have not received a refund because they had quit their programs, rather than because the school had suddenly closed. When asked why he had failed to raise this issue earlier or otherwise communicated with the Court, Defense Counsel explained that personal and professional problems had prevented him from litigating this case but he was prepared to litigate now.

Plaintiff vigorously opposed Defendants' request, citing Defense Counsel's persistent non-responsiveness in this case as well as in Defendants' bankruptcy proceedings and appeal. After the hearing, the Court took Plaintiff's motion for default judgment as well as Defense Counsel's oral motion under advisement.

### III.      ANALYSIS

A clerk's entry of default was entered against both Defendants in this case on on May 22, 2013. (Dkts. 16-17.) Neither Defendant has moved for relief, and Plaintiff now seeks default judgment pursuant to Federal Rule of Civil Procedure 55(b).

### A.      Default Judgment Requirements

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *Hanner v. City of Dearborn Heights,* No. 07–15251, 2008 WL 2744860, *1 (E.D. Mich. July 14, 2008); *see also Hickman v. Burchett*, No. 07–743, 2008 WL 926609, *1 (S.D. Ohio Apr. 4, 2008) ("[E]ntry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." (internal quotation marks omitted, collecting cases)). Once a default has been entered by the clerk, all of Plaintiff's well-pleaded allegations are deemed admitted. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering*, 661 F.2d at 124); *see also* Fed. R. Civ. P. 8(b)(6) (providing that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

A default judgment is final and absolute unless the Court sets it aside. *See Thomson v. Wooster*, 114 U.S. 104, 113 (1885) ("…one against whom a decree pro confesso has been entered is absolutely precluded from alleging anything in opposition to the decree, so long as it stands unrevoked, except what appears on the face of the bill"); *see also Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (appellant had the responsibility of convincing the district court to vacate the default judgment or else it would remain in force and subject to execution). Relief from a default judgment must be sought under Federal Rule of Civil Procedure 60(b).

When the complaint alleges damages for a sum certain, "the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In this case, Plaintiff's class action complaint did not allege a sum certain; accordingly, she filed her motion for default judgment on October 12, 2015 and included as an exhibit a class list documenting the amount of tuition and fees each class member had paid. (Dkt. 42, Ex. 9.) In total, Plaintiff is requesting a judgment in the amount of $1,422,080.05, exclusive of interest.

## 1. Jurisdictional Requirements

To avoid entering a default judgment that can later be successfully attacked as void under Federal Rule of Rule 60(b)(4), a Court should determine whether it

has jurisdiction over the parties and the subject matter. Here, Plaintiff has sufficiently alleged original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in her complaint.[6] (*See* Dkt. 1, ¶¶ 7-9.) Plaintiff alleges, and Defendants do not deny, that Plaintiff is a Michigan citizen, Defendant GCNM is a California corporation with its principal place of business in California, and Defendant Johnstone is a citizen of Illinois. (*Id.*) Plaintiff also alleged in her unanswered complaint that the amount in controversy exceeded $5,000,000.00 because GCNM collected at least this much in pre-paid tuition from thousands of enrolled students.[7] (*Id.* at ¶ 12.) A fair reading of the complaint thus establishes that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## 2. Extensive Choice of Law Analysis not Required

In addition to jurisdiction, the Court will also briefly address choice of law because, as Plaintiff observes in her motion, GCNM operated in California and this lawsuit was filed in Michigan. (Dkt. 42, p. 12.) A federal court sitting in diversity jurisdiction applies the substantive law and choice of law rules of the forum state in

---

[6] This section states in relevant part that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which [...] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (d)(2)(A).

[7] Pursuant to 28 U.S.C. § 1332(d), the amount in controversy must exceed $5,000,000.00. "To determine the amount in controversy, the Court first looks to the Complaint." *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). The relevant question is whether a "fair reading" of the complaint makes it more likely than not that damages exceed $5,000,000. *See id* at 573; *see also Black v. Crowe, Paradis, & Albren, LLC*, No. CIV.A. 5:14-187-KKCB, 2014 WL 3965043, at *2 (E.D. Ky. Aug. 13, 2014). Plaintiff alleges in her complaint that, at the time GCNM closed, it had collected "millions of dollars in advance tuition" from a Class that included "thousands of similarly situated persons in states across the United States." (Dkt. 1, ¶¶ 2, 17.) Plaintiff asserted that the amount in controversy exceeded the judicial threshold exclusive of interest and costs given that GCNM "collected more than $5 million in tuition from Plaintiff and members of the Class." (*Id.* at ¶¶ 12, 41.) Defendants never answered Plaintiff's complaint or otherwise challenged Plaintiff's assertions regarding jurisdiction.

which the court sits. *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014.) Michigan courts "will apply Michigan law unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286 (1997).

Here, as Plaintiff documents, the laws of California and Michigan are either the same or substantially similar for all of Plaintiff's claims. (*See* Dkt. 42, p. 13.) Moreover, Defendants do not argue that California law or that of any state other than Michigan should apply. This Court has not found, nor have Defendants provided, any reason to disagree with Plaintiff's assertion that "an extensive choice of laws analysis" is not required in this case "because the laws of Michigan and California are the same for purposes of entry of judgment here." (Dkt. 42, p. 20.) Because the parties do not dispute that a certain state's substantive law applies, the Court will not delve any further into a "choice of law" analysis. *See GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998).

## B. Entry of a Default Judgment Is Warranted

The damages in this case have been established and default judgment in the amount of damages documented by Plaintiff will be entered against Defendants. Although Federal Rule of Civil Procedure 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, case law holds that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. *State Farm Bank, F.S.B. v. Sloan*, No. 11-CV-10385, 2011 WL

2144227, at *2 (E.D. Mich. May 31, 2011); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (3rd ed.).

1. **The Factors Guiding the Court's Discretion Weigh in Favor of Entering Default Judgment**

The district court's sound discretion is guided by the following factors: (1) possible prejudice to the Plaintiff; (2) the merits of the Plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004) (citing *Eitel* and addressing factors (1)-(4)).

Upon consideration of these factors, the Court concludes that default judgment is appropriate in this case. With respect to the first factor, Plaintiff and the Class she represents would suffer prejudice were the Court to deny Plaintiff's motion and allow Defendants to answer the complaint and effectively re-initiate this entire law suit nearly three years after it was first filed. Plaintiff and the other class members have been waiting these three years for relief in this matter given that Defendants never refunded the pre-paid tuition received from class members after GCNM closed. Defendants, meanwhile, have consistently failed to respond to any filings in this case, prolonging its litigation.

While this case has been pending, Plaintiff's Counsel has invested significant time in its litigation, including intervening in Defendant Johnstone's bankruptcy

proceeding in the Northern District of Illinois to prevent the discharge of Defendant Johnstone's debt to Plaintiff and the Class she represents. Defendant Johnstone's appeal of the bankruptcy court's decision to deny her a discharge was also unsuccessful because she never filed an opening brief even after requesting and being granted seven extensions.

Given Defendants' persistent non-responsiveness both here and in the Northern District of Illinois, the record supports the conclusion that any additional extensions would be as futile as previous ones have proven to be. Additional delay under these circumstances would be unreasonably prejudicial to the class members. Thus the first factor – possible prejudice to Plaintiff – clearly weighs in favor of entering a default judgment.

The second and third factors – the merits of the claim and the sufficiency of the complaint – also weigh in favor of entering judgment by default. The class members pre-paid tuition for educational programs that GCNM did not ultimately provide. That unearned tuition was never refunded, leaving class members deprived of their funds and unable to begin or complete their degree programs. These factual allegations are taken as true because Defendants are in default and have never challenged Plaintiff's claims. *See Cross*, 441 F. Supp. at 848 ("When a defendant is in default, the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true.").

The remaining factors also weigh in favor of entering default judgment. Regarding the fourth factor, while the total judgment sought is not insignificant, it

16

is relatively low considering the number of class members. The fifth factor is whether there is a possibility of a dispute as to the material facts. At the December 11 hearing, Defense Counsel suggested the possibility that some of the students listed on the spreadsheet showing un-refunded tuition amounts (Dkt. 46) could possibly have quit their programs or failed out of their classes, thereby calling into question whether they were entitled to a refund. Although this argument suggests that more than one inference could be drawn from the undisputed record showing tuition amounts that had been received for education programs that were not completed at the time Defendants ceased operations, it does not dispute the factual accuracy of the un-refunded tuition amounts.

Defendants had nearly three years in which to mount a defense to Plaintiff's claims, but made no effort to dispute the complaint until they raised this possible inference during oral argument. Defense Counsel presented no evidence in support of this theory, nor did he proffer the existence of such evidence. While this factor may weigh slightly in favor of Defendants, the failure to raise this argument in a timely manner, or to offer any evidence to support it, evens the scales between the parties on this factor. Defendants have forfeited their right to dispute Plaintiff's allegations by not answering the complaint or addressing that issue before now. *See Ford Motor Co.*, 441 F. Supp. 2d at 848.

As for the sixth factor, the Court finds no basis to conclude that Defendants' failure to answer the complaint was the result of excusable neglect. Defendants were served with the complaint on February 11, 2013 (Dkts. 5-6); they were given

over three months to answer it (Dkt. 13), and were represented by counsel the entire time (Dkt. 12). Far from offering any proof of excusable neglect, Defense Counsel merely alluded during oral argument to having experienced unspecified personal and professional problems. Whatever these possibly genuine problems may have been (and none of them were ever identified or explained to the Court), it is clear that Defense Counsel was not entirely incapable of litigating this case when he wanted to do so. Defense Counsel has appeared in Court for some contested hearings, communicated with opposing counsel to arrange for extensions of various deadlines, and provided discovery including financial and student records as recently as July 15, 2015.

Unfortunately, where it mattered most, Defense Counsel did nothing. Defendants failed to answer the complaint, offered no opposition to the motion to certify the class, neglected to respond to the clerk's entry of default, and disregarded the motion for entry of default judgment. An attorney's unspecified, longstanding personal and professional problems are regrettable, but do not excuse almost three years of non-responsiveness.

Of course, the Court could only speculate on the question whether Defense Counsel kept his clients fully informed about the progress and requirements of this litigation. There can be no doubt, however, that Defendants knew they were being sued and that, if they were unsatisfied with their lawyer's performance at any point since early 2013, they could have sought new counsel and begun to litigate this case on its merits. Defendants, for whatever reason, have chosen not to do so. There is

thus no indication on this record that either Defendants or their Counsel have given much more than minimal attention to this litigation.[8]

Finally, while public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter or by seeking new counsel willing and able to vigorously litigate this case. Defense Counsel has made an oral request to answer the complaint nearly three years after it was filed, but could only offer his word as reassurance that he is finally able and ready to litigate this case. In light of the persistent non-responsiveness of Defense Counsel, both here and in the Northern District of Illinois, Defense Counsel's word is an insufficient basis for requiring Plaintiff and this Court to continue to try this case. "Effective judicial administration requires that at some point disputes be treated as finally and

---

[8] Considering how Defendants prosecuted the litigation of their related bankruptcy proceedings, it is clear that they had the capability to pursue litigation with vigor when they found it sufficiently within their interest to do so. In that litigation, Defendants were also represented by Mr. Brian Graham, the same Defense Counsel in this case. Defendant GCNM filed for Chapter 7 bankruptcy on September 12, 2013 in the Northern District of Illinois. *In re Global College of Natural Medicine, Inc.*, No. 13-36174 (N.D. Ill.), Dkt. 1. After some delay, Defense Counsel filed a Summary of Schedules as well as Schedules A, B, D, E, F, G, and H on December 4, 2013. *Id.*, Dkt. 20. The bankruptcy was closed and the Trustee discharged on March 12, 2014. *Id.*, Dkt. 31. Defendant Heather Johnstone also filed for Chapter 7 bankruptcy on September 12, 2013 in the Northern District of Illinois. *In re Heather A. Johnstone*, No. 13-36162 (N.D. Ill.), Dkt. 1. On December 4, 2013, Defense Counsel filed a Summary of Schedules and Schedules A, B, C, D, E, F, G, H, I, and J in that proceeding. *Id.*, Dkt. 22. Plaintiff Toler intervened and objected to Defendant Johnstone's attempt to discharge her debt to Plaintiff and the Class on December 12, 2013. *Id.*, Dkt. 25. On February 24, 2014, Defense Counsel filed a motion to dismiss Plaintiff Toler's complaint objecting to the discharge. *Toler v. Johnstone*, Case No. 13-01398, (N.D. Ill.), Dkt. 12. Defense Counsel then filed a motion to amend the scheduling order (*Id.*, Dkt. 15), and answered Plaintiff Toler's complaint and filed a counterclaim (*Id.*, Dkt. 21). Defense Counsel also litigated discovery disputes by filing motions to extend and motions for protective orders (*Id.*, Dkts. 32, 38, 41) and appeared at various status conferences and contested hearings (*See id.*, Dkts. 76-84). After the Bankruptcy Court entered default judgment against Defendant Johnstone on November 13, 2014 (*Id.*, Dkt. 61), Defense Counsel filed a motion for reconsideration on November 28, 2014 (*Id.*, Dkt. 63). When that motion was denied (*Id.*, Dkt. 65), Defense Counsel appealed (*Id.*, Dkts. 66-72). Defendant Johnstone's appeal was dismissed on August 27, 2015 for failure to file an opening brief. *Johnstone v. Toler*, No. 14-cv-10405 (N.D. Ill.), Dkt. 31.

definitively resolved." 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.) Considering all of these factors, they weigh overwhelmingly in favor of entering a default judgment against Defendants.

## 2. Plaintiff has Established and Documented her Damages

The final issue is the measure of damages. Rule 55(b)(2) empowers the Court to hold a hearing to determine damages, which the Court has done. At the hearing, Plaintiff entered a class list documenting each class member, the amount each member had paid to GCNM in tuition and fees, and whether and when each class member completed a specific degree program. (Dkt. 46.) This data was taken from Defendants' own records; specifically from the financial records submitted to Plaintiff's counsel on July 15, 2015. (*Id.*) In total, Plaintiff has documented $1,424,573.05 in tuition and fees paid to GCNM by class members who had not completed their pre-paid courses of study when it closed.

As discussed above, Defense Counsel's suggestion at the hearing that some students included in the Class List attached as Exhibit A may not have been damaged as a direct result of GCNM's closing was not supported by any evidence. If the legal concept of default is to have any meaning, it must at a minimum preclude a party which has defaulted from belatedly raising arguments that should have been raised before the default occurred and that its dilatory conduct has so clearly waived.[9] *See H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d

---

[9] Any such arguments should have been raised and substantiated in a response to Plaintiff's motion for default judgment. As noted above, Defense Counsel never filed a response even after being granted an extension and never communicated with the Court prior to the hearing on Plaintiff's motion. (*See* Dkt. 42.) By then, the deadline to file a response had long since passed. See LR

689, 691 (D.C. Cir. 1970) (default judgment available only when adversary process has been halted because of an essentially unresponsive party; diligent party "must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.")

Defendant requested and obtained an extension of time to respond to the motion for entry of default judgment, but nevertheless failed to file any response. The time to raise potential arguments has passed. Where, over nearly three years, Defendants have repeatedly demonstrated their unwillingness to meet the issue in this case, and Plaintiff has doggedly and thoroughly followed the procedures required to secure the entry of a default judgment, any further delay in the resolution of this matter would not be in the interest of justice.

## IV.    CONCLUSION

Having found that default judgment is appropriate in this case and that Plaintiff has satisfactorily established damages, Plaintiff's motion for default judgment (Dkt. 42) is hereby **GRANTED**. Default judgment is entered in favor of Plaintiff and the individuals listed in the Class List attached as Exhibit A in the amount of $1,422,080.05 exclusive of interest. Defendants' oral motion for leave to answer the complaint is hereby **DENIED**. Judgment will be entered separately.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
Dated:  January 6, 2016          UNITED STATES DISTRICT JUDGE

---

7.1(e)(1)(B) and Fed. R. Civ. P. 6(d). "Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved." 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.).

## <u>**Certificate of Service**</u>

I hereby certify that this Order was electronically submitted on January 6, 2016, using the CM/ECF system, which will send notification to each party.

By: <u>s/K. Jackson</u>
     For Case Manager Amanda Chubb
